## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER PRINCE, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. |
| | ) | |
| vs. | ) | |
| | ) | |
| THE HUNTINGTON INVESTMENT | ) | |
| COMPANY d/b/a HUNTINGTON BANK, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendant.* | ) | |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Heather Prince, by and through the undersigned counsel, now files the within Complaint in Civil Action against Defendant, The Huntington Investment Company d/b/a Huntington Bank ("Defendant"), averring as follows:

## PARTIES

1.      Plaintiff, Heather Prince ("Plaintiff"), is an adult individual who resides in Aliquippa, Pennsylvania 15001.  At all times relevant, Plaintiff was a "qualified individual with a disability" within the purview of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 1201, *et seq.* (hereinafter, and collectively, the "ADA").

2.      The ADA defines the term "disability" as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)). 42 U.S.C. § 12102.

3.      Plaintiff possesses a "disability" pursuant to 42 U.S.C. § 12102(A), being Complex Regional Pain Syndrome (the "Disability").  At all times relevant hereto, the Disability impaired Plaintiff's major life activities including Plaintiff's ability to perform manual tasks, lift objects and work.  Specifically, Plaintiff experienced chronic, intermittent symptoms of pain and decreased mobility.

4.      Defendant is an Ohio business corporation which utilizes a commercial registered agent in Pennsylvania of CT Corporation System located at 1515 Market Street, Suite 1210, Philadelphia, Pennsylvania 19102.  Additionally, Defendant has business operations located at 2706 Brodhead Road, Aliquippa, Pennsylvania 15001, the location where Plaintiff reported to for her workplace duties (hereinafter, the "Facility").

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under the ADA (collectively, Plaintiff's claims arising under the ADA are identified as the "Federal Law Claims").

6.      Plaintiff is also advancing claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").  This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.  Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.     The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "<u>Western District</u>") as a substantial part of the Federal Law Claims occurred within this judicial district.  Specifically, these events and omissions occurred within Beaver County, Pennsylvania which is one of the counties encompassed by the Western District.  This matter is properly before the Pittsburgh division of the Western District given the conduct complained of herein arose in Baver County, Pennsylvania and conduct arising within Beaver County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.     This Court May Exercise Personal Jurisdiction Over Defendant through Defendant's Consent to Personal Jurisdiction of Pennsylvania's Courts and Pennsylvania's Long-Arm Statute.**

8.      This Court may exercise personal jurisdiction over Defendant as: (1) Defendant has subjected itself to jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa. C.S. § 5301: and (2) Defendant has the required minimum contacts with this forum for purposes of Pennsylvania's Long-Arm statute codified within 42 Pa. C.S. § 5322.  Further, the exercise of jurisdiction over Defendant complies with the traditional notions of fair play and substantial justice required by the Due Process Clause of the Constitution.

9.      Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301.  *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 , 472 (1985) and *Bane v. Netlink, Inc.*, 925 F.2d 637 , 641 (3d Cir. 1991).

10.     Specifically, 42 Pa. C.S. § 5301 states "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person."  42 Pa. C.S. § 5301(a).  This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.--
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

11.      Defendant maintains the Facility in Pennsylvania and conducts business operations within Pennsylvania.  As such, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

12.     Personal jurisdiction may also be found over a defendant based upon Pennsylvania's "Long-Arm Statute".  Pennsylvania's Long-Arm statute provides that a tribunal may exercise personal jurisdiction where an individual or entity is "transacting any business in this Commonwealth".  42 Pa.C.S. § 5322.  The following enumerated subsections within 42 Pa. C.S. § 5322(a) define "transacting any business" to include:

> (1)(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an act.
> (1)(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
> (1)(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.
> (1)(v) The ownership, use or possession of any real property situate within this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth

(5) "having an interest in, using, or possessing real property in this Commonwealth

(10) committing any violation within the jurisdiction of this Commonwealth of any statue, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

*Id.*

13.     In the instant matter, personal jurisdiction can be found over Defendant under Pennsylvania's Long-Arm Statute for the following reasons:

   a.   Defendant routinely conducts and solicits business within the Commonwealth of Pennsylvania for the purpose of pecuniary gain.  In support of its business operations, Defendant utilizes property located within the Commonwealth of Pennsylvania; and

   b.   As averred more fully below, Defendant violated numerous statutory provisions of federal and state law and the underlying events giving rise to Defendant's unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania.

14.     This Court's exercise of personal jurisdiction over Defendant comports with the Due Process Clause of the Constitution through the "specific jurisdiction" that exists over Defendant as the causes of action complained of herein arise specifically from Defendant's contact with the forum.  U.S. Const. amend XIV, § 1.

15.     The inquiry into whether "specific jurisdiction" exists possesses three parts. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  First, a "defendant 'must have purposefully directed [its] activities' at the forum".  *Id.* quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  Second, the instant litigation must "arise out of or relate to at least one of those activities".  *Id.* quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*,

466 U.S. 408, 414 (1984). And third, whether the exercise of jurisdiction "'comport[s] with fair play and substantial justice'". *Id.* quoting *Burger King*, 471 U.S. at 476.

16.     Defendant has engaged in business operations for pecuniary gain within the forum and these business operations were, at all times relevant hereto, intentionally effectuated by the Defendant. As more thoroughly delineated below, Plaintiff participated in these business operations, through an employment relationship, and correspondingly the Federal Law Claims and the State Law Claims arise from said relationship. Further, the Federal Law Claims and the State Law Claims arose because of these business operations and from the unlawful activity Defendant engaged in occurred within the scope of these operations.

17.     The exercise of personal jurisdiction exists over Defendant and complies with the notions of "fair play and substantial justice" required by *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

18.     Personal jurisdiction over Defendant is proper in light of Defendant's consent to personal jurisdiction and Pennsylvania's Long-Arm Statute and Defendant may properly be pursued before this Court.

**D.     Plaintiff Has Exhausted Her Administrative Remedies and the Federal Law Claims Are Now Properly Able to be Brought Before This Court.**

19.     Plaintiff has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959 and now may proceed to bring this action before the Court. Specifically:

      a.     On or about May 22, 2024, Plaintiff dual filed a charge of discrimination seeking redress for the Federal Law Claims and the State Law Claims with the Equal Employment Opportunity Commission (the "EEOC") at charge number 533-

2024-02093 (the "<u>EEOC Charge</u>") and with the Pennsylvania Human Relations Commission (the "<u>PHRC</u>").

b.  On June 14, 2024, the EEOC issued Plaintiff the Determination and Notice of Rights (the "<u>DNR</u>") wherein Plaintiff was afforded 90 days within which to timely file the Federal Law Claims.  A true and correct copy of the DNR is attached hereto, made a part hereof, and identified as **Exhibit A**.  The instant Complaint is filed within the 90-day time period.

## GENERAL ALLEGATIONS

20.    On or about April 1, 2023, Plaintiff commenced her employment with Defendant in the full-time position of "Customer Experience Banker."   Correspondingly, Defendant compensated Plaintiff on an hourly wage basis of $20.00 per hour worked.

21.    At the outset of Plaintiff's employment with Defendant, Plaintiff informed her direct supervisor, Defendant's Branch Manager, Amy Buckler ("<u>Ms. Buckler</u>") not only of the Disability but details thereof, such as: (i) that it typically causes her severe pain and bodily soreness, often centered upon the arms, legs and back; and (ii) that she [Plaintiff ] would work as much as she could through the pain but that there would be times when the Disability would limit her.

22.    Upon receiving the above-delineated information, Ms. Buckler was understanding and told Plaintiff that she would "work with her" on how to approach the Disability in the workplace, including ways in which Plaintiff could potentially be accommodated.

23.    Due to her Disability, Plaintiff has a spine stimulator attached to her body that can frequently cause back swelling, pain, and bruising.  In order to manage her pain caused by the same, Plaintiff had to sit and rest her back from time to time (the "<u>First Accommodation</u>").

24.     Plaintiff invoked the First Accommodation on numerous occasions, contemporaneously informed Ms. Buckler of the same, and did not perceive it was an undue burden for Defendant, as her job duties could be completed while briefly sitting from time to time. However, Ms. Buckler immediately and frequently took issue with Plaintiff's invocation of the First Accommodation.

25.      In or around May of 2023, Plaintiff was working with a customer when she felt herself becoming lightheaded from the back pain she was experiencing.  She immediately grabbed a chair and slid it under herself in case she passed out.

26.     After Plaintiff finished the interaction with the customer set forth above, Ms. Buckler came to Plaintiff and told her she "hated the chairs" and that "employees should not be sitting around customers."

27.     Plaintiff replied that she was only using the chair because of the Disability and that she needed it to manage her pain.  Stunningly, Ms. Buckler told Plaintiff that the chair use was "disrespectful" and followed it up by stating, "You told me [the Disability] would not affect work, but now it is."

28.     Plaintiff was incredibly offended by Ms. Buckler's statement delineated above as she had been doing her best to work through her pain and support Defendant's business operations to the best of her abilities.

29.     Subsequent to the above-referenced events, Ms. Buckler continued to make derogatory and discriminatory comments about the Disability and the First Accommodation on a weekly basis.

30.     On one occasion, as Plaintiff was discussing an idea she was presenting to Defendant's District Manager, Jason Lipford ("Mr. Lipford"), Mr. Lipford explicitly informed

Plaintiff that she was to go through Ms. Buckler for all workplace topics and issues, thus affording Plaintiff no option to levy complaints about Ms. Buckler's discriminatory behavior and therefore allowing Ms. Buckler to be the sole arbiter of her own discriminatory behavior. Not surprisingly, the behavior never changed.

31.     In addition to Defendant's denial of Plaintiff's First Accommodation, Plaintiff expressly informed Ms. Buckler of the pain she was experiencing because she was being forced to run back and forth between the main counter and the drive-through window to service customers[1]. To alleviate the issue, she asked to be assigned to only one of the two duties (the "Second Accommodation").

32.     In response to the foregoing, Ms. Buckler told Plaintiff that she would be unable to accommodate her in such a manner. Ultimately, this then led to Plaintiff developing diagnosed arthritis in her foot.

33.     Ms. Buckler and Defendant's conduct prevented any reasonable person suffering from the Disability the ability to work for Defendant. Realizing the same and with no relief or change being made or in sight, on September 27, 2023, Plaintiff was forced to terminate the employment relationship and was constructively discharge.

**COUNT I**
**DISCRIMINATORY CONSTRUCTIVE DISCHARGE**
**IN VIOLATION OF THE ADA AND/OR THE PHRA**
**42 U.S.C. § 1201, *et seq.* and 43 Pa. Cons. Stat. § 951, *et seq.*, respectively**

34.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

---

[1] At this time, the Facility was not fully staffed and, therefore, Plaintiff was forced to complete the workplace duties of two employees which was in no way physically conducive to Plaintiff given her Disability.

35. The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities. 42 U.S.C. § 12101. Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a).

36. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate: (1) they are a disabled person within the meaning of the ADA; (2) they are otherwise qualified to perform the essential functions of their job, with or without reasonable accommodations by the employer; and (3) they suffered an otherwise adverse employment decision as a result of discrimination. *See McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

**A.     Plaintiff is a "Disabled Person" Pursuant to 42 U.S.C. § 12102 of the ADA.**

37. As established herein, Plaintiff possessed a "disability" under the meaning of the ADA and was correspondingly "disabled" for purposes of establishing her *prima facie* case, given the numerous ways in which the Condition substantially impaired her major life activities. Specifically, Plaintiff routinely experienced pain and mobility issues due to the Disability. Given the far-reaching impact of the Disability, Plaintiff's major life activities were substantially impaired both physically by the Disability and by the means in which Plaintiff was forced to adapter her major life activities to minimize the impact of the Disability.

**B.**     **Plaintiff is a "Qualified Individual" Pursuant to 42 U.S.C. § 12111 of the ADA and Was Qualified to Perform the Essential Functions of her Job With or Without Reasonable Accommodations.**

38.     At all times material, Plaintiff was qualified to perform the duties and essential functions of the "Customer Experience Banker" position.  The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To meet this definition, Plaintiff must show she possessed "the requisite skill, experience, education and other job-related requirements of the employment position" and that she "can perform the essential functions of the position with or without reasonable accommodations". *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998).

39.     Plaintiff possessed and exercised the skill, experience, and ability needed to perform the essential functions of the "Customer Experience Banker" position.  Specifically, Plaintiff was sufficiently skilled in the areas of comprehension, communication, interpretation, and had the physical abilities to perform the duties that were associated and always required as part of the "Customer Experience Banker" position.

40.     Plaintiff requested the First Accommodation in order to manage her pain caused by the spine stimulator, which included the ability to sit and rest her back from time to time.  With that minor exception, Plaintiff was able to continue all duties associated with the "Customer Experience Banker" position.

41.     Further, Plaintiff requested the Second Accommodation in order to alleviate the pain associated with the Disability due to the strenuous physical activity which was required to

constantly run back and forth between the main counter and the drive-through window of the Facility.

**C.    Plaintiff Suffered an "Adverse Employment Action" as a Result of Discrimination.**

42.    The Third Circuit has held that an "adverse employment action" is an action taken by an employer which is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 765 (3d Cir. 2004).

43.    Due to Defendant's refusal to comply with the First Accommodation and the Second Accommodation, Plaintiff suffered in pain which led to the development of arthritis in her foot.  With no relief in sight, Plaintiff was forced to terminate the employment relationship and was constructively discharged.

**D.    Plaintiff is Entitled to Pursue Punitive Damages as Defendant Discriminated Against Her With Malice and Reckless Indifference to Her Federal Protected Rights.**

44.    A plaintiff may recover punitive damages where he can demonstrate a defendant, "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) citing 42 U.S.C. § 1981(a)(b)(1).  The terms "malice" and "reckless indifference" pertain specifically to the defendant's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination".  *Id.* citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526 , 535 (1999).

45.    At all times material, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by the ADA.  By significantly reducing the hours of Plaintiff, but no other employee, and telling her it was due to her inability to perform duties that caused her Condition to

worsen, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

46.     As a direct and proximate result of Defendant's discriminatory conduct in violation of the ADA, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Heather Prince, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT II
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA AND/OR THE PHRA
### 29  U.S.C. §§ 621, *et seq.* and 43 Pa. Cons. Stat. § 951, *et seq.*, respectively

47.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

48.     Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Technologies Inc.*, 134 F.3d 576, 579 (3d Cir. 1998).  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

49.     A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

50.     An entity discriminates against an individual on the basis of disability when, inter alia, it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the] entity."  42 U.S.C. § 12112(b)(5)(A).

51.     Reasonable accommodations may include, inter alia, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9).

52.     Congress has defined "disability" to mean, "with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1).

53.     The ADA prohibits employers from discriminating against employees for their disabilities. 42 U.S.C. § 12112; 43 Pa. Cons. Stat. § 955. To establish a prima facie case of disability discrimination, an employee must show that she "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006).

**A.      Plaintiff Has a Disability.**

54.      Plaintiff is disabled under the meaning of the ADA with her Disability as previously defined herein.

55.      The Defendant had knowledge of Plaintiff's Disability.

**B.      Plaintiff Was Qualified for the Position.**

56.      Plaintiff was at all times qualified for the "Customer Experience Banker" position.

**C.      Plaintiff Suffered Adverse Employment Action on the Basis of Her Disability.**

57.      Defendant did not adhere to the First Accommodation or the Second Accommodation Plaintiff requested, thereby unilaterally denying the same without engaging in any interactive process whatsoever with Plaintiff.

58.      Plaintiff suffered a constructive discharge by being forced to bear significant physical pain which she could no longer endure and which she saw no end to due to Defendant's refusal to comply with the First Accommodation and the Second Accommodation.

59.      As a direct and proximate result of Defendant's discriminatory conduct in violation of the ADA, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Heather Prince, seeks the damages set forth in the ad damnum clause of this Complaint, infra.

<u>COUNT III</u>
**UNCORRECTED HOSTILE WORK ENVIRONMENT**
**VIOLATION OF THE ADA AND THE PHRA**
**42 U.S.C. § 1201,** *et seq.* **and 43 Pa. Cons. Stat. § 951,** *et seq.***, respectively**

60.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

61.     The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to … terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  In construing this phrase, courts have recognized a cause of action for a hostile work environment.  See, e.g., *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003); *Walton v. Mental Health Ass'n of Southeastern Pa.,* 168 F.3d 661, 666-67 (3d Cir. 1999).

62.     "A claim for harassment based on disability, like one under Title VII, would require a showing that: (1) [the plaintiff] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton*, 168 F.3d at 667.

63.     The inquiry into whether a person is disabled under the ADA is made on a case-by-case analysis.  *Tice v. Centre Area* Transport *Authority*, 247 F.3d 506, 513 n.5 (3d Cir. 2001).

**A.     Plaintiff is a Qualified Individual With a Disability Under the ADA.**

64.     As established above, Plaintiff is disabled within the meaning of the ADA and the PHRA.

65.     At all times material, Plaintiff was qualified to perform the duties and essential functions of the "Customer Experience Banker" position.  The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).   To meet this definition, Plaintiff must show she possessed "the requisite skill, experience, education and other job-related requirements of the employment position" and that she "can perform the essential functions of the position with or without reasonable accommodations". *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998).

66.     Plaintiff possessed and exercised the skill, experience, and ability needed to perform the essential functions of the "Customer Experience Banker" position.  Specifically, Plaintiff was sufficiently skilled in the areas of comprehension, communication, interpretation, and had the physical abilities to perform the duties that were associated and always required as part of the "Customer Experience Banker" position.

67.     Plaintiff requested the First Accommodation in order to manage her pain caused by the spine stimulator, which included the ability to sit and rest her back from time to time.  With that minor exception, Plaintiff was able to continue all duties associated with the "Customer Experience Banker" position.

68.     Further, Plaintiff requested the Second Accommodation in order to alleviate the pain associated with the Disability due to the strenuous physical activity which was required to constantly run back and forth between the main counter and the drive-through window of the Facility.

**B.      Plaintiff was subject to unwelcome harassment.**

69.      As averred above, Ms. Buckler's statements such as (i) she "hated the chairs"; (ii) that "employees should not be sitting around customers"; (iii) that the chair use was "disrespectful"; and (iv) "You told me [the Disability] would not affect work, but now it is" ridiculed, humiliated and demeaned Plaintiff concerning the Disability on nearly a daily basis.

**C.      The harassment was based on Plaintiff's Disability.**

70.      Ms. Buckler's comments set forth above were explicitly concerning Plaintiff's Disability.

**D.      The Harassment was Sufficiently Severe or Pervasive to Alter Plaintiff's Working Conditions and Created an Abusive Working Environment.**

71.      Unfortunately, the comments levied by Ms. Buckler persisted on a regular and routine basis and became part of the common workplace culture for the entirety of Plaintiff's employment.

72.      Given the length, manner and regular frequency of the harassment, the harassment was so severe and pervasive that it created an abusive working environment.

**E.      Defendant Knew or Should Have Known of the Harassment and Failed to Take Prompt Effective Remedial Action.**

73.       Plaintiff attempted to protest against Ms. Buckler's discriminatory and unwelcome comments towards Plaintiff, but Ms. Buckler refused to change her behavior.

74.      Given Mr. Lipford's explicit instructions to Plaintiff, that she must go through Ms. Buckler for all workplace topics and issues, Plaintiff was left without further recourse to protest Ms. Buckler's harassment and the resulting hostile work environment.

75.      As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and

lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Heather Prince, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### *AD DAMNUM* CLAUSE AND REQUEST FOR RELIEF

76.     Plaintiff, Heather Prince, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, The Huntington Investment Company d/b/a Huntington Bank, and prays for relief as follows:

77.     Declare and find that Defendant committed one or more of the following acts:

  i.    Violated the ADA and/or the PHRA by denying Plaintiff the First Accommodation and the Second Accommodation;

  ii.   Violated the ADA and/or the PHRA by creating and sustaining a hostile work environment on the basis of Plaintiff's Disability; and

  iii.  Violated the ADA and/or the PHRA by constructively discharging Plaintiff on the basis of her Disability; and

  iv.   Acted with malice and/or reckless indifference to Plaintiff with regard to her federally protected rights under the ADA.

78.     Award compensatory damages to Plaintiff, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

79.     Award punitive damages to Plaintiff in an amount to be determined at trial;

80.     Award equitable relief to Plaintiff in form of back pay and front pay;

81. Award to Plaintiff attorney's fees and costs of suit incurred prosecuting these claims;

82. Award to Plaintiff pre-judgment and continuing interest as calculated by the Court;

83. Award to Plaintiff injunctive and other equitable relief as provided by law; and

84. Award such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: August 21, 2024   By: */s/ Erik M. Yurkovich*
           Erik M. Yurkovich (Pa. I.D. No. 83432)

           The Workers' Rights Law Group, LLP
           Foster Plaza 10
           680 Andersen Drive, Suite 230
           Pittsburgh, PA 15220
           Telephone: 412.910.8057
           erik@workersrightslawgroup.com

           *Counsel for Plaintiff, Heather Prince*